## UNITED STATES v. FIFTY WALTHAM WATCH MOVEMENTS.

(District Court, N. D. New York.    June 6, 1905.)

1. CUSTOMS DUTIES—ILLEGAL IMPORTATION—FORFEITURE—FRAUD—ABSENCE OF INTENT.

Proceedings for forfeiture of merchandise illegally imported may be sustained under section 3082, Rev. St. [U. S. Comp. St. 1901, p. 2014], though the United States has not been defrauded of any sum, and there has been no intent to defraud.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Customs Duties, § 297.]

2. SAME—FREE GOODS—INTENTIONAL EVASION OF LAW.

An importer, for the purpose of serving his own pecuniary interests, intentionally omitted to meet the requirements of the customs laws of the United States, in that he failed to enter certain imported articles at any customhouse, and to comply otherwise with the law.    If duly imported, the articles would have been free of duty.    *Held*, that this was an offense which rendered the merchandise liable to forfeiture, under section 3082,

Rev. St. [U. S. Comp. St. 1901, p. 2014], as imported "knowingly * * * contrary to law."

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Customs Duties, § 297.]

**3. SAME—NECESSITY OF COMPLYING WITH LAW.**

The requirements of the customs laws regarding the importation of goods are just as positive in respect to goods exempt from duty as in respect to dutiable goods. It is the duty of importers to comply with such laws, irrespective of whether the merchandise they import is dutiable.

**4. SAME—TREASURY REGULATIONS—CONTINUATION UNDER NEW TARIFF.**

The rules and regulations prescribed by the Secretary of the Treasury under one tariff act may legally be kept in force under a succeeding act by adopting and continuing to enforce them.

**5. SAME—FAILURE TO PROMULGATE REGULATIONS.**

On proceedings under section 3082, Rev. St. [U. S. Comp. St. 1901, p. 2014], for the forfeiture of merchandise imported contrary to law, which would have been admissible free of duty on compliance with regulations which the Secretary of the Treasury is authorized by law to prescribe, it may not be maintained in defense that the regulations have not been promulgated, and that therefore the importer was justified in importing the merchandise according to his own convenience, independently of the requirements of law. Such an importation would be "contrary to law," under said section.

**6. SAME—ILLEGAL IMPORTATION—COMMON-LAW OFFENSE.**

Where an importer brought merchandise into the United States without complying with the customs laws, but there was no intent to defraud the United States, *held*, that this would not constitute an offense at common law.

Action for Forfeiture of Merchandise Seized as Illegally Imported.

Note Six Parcels of Placer Gold v. U. S. (Ariz.) 76 Pac. 473.

This is an action or proceeding under the provisions of section 3082 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 2014] to condemn 50 Waltham watch movements, manufactured at Waltham, Mass., exported to the Dominion of Canada, there purchased by one J. H. Racicott, the claimant herein, and by him sent by team across the border into the United States for sale and use in the United States without passing through the customhouse, or complying with the rules and regulations of the Secretary of the Treasury of the United States alleged to be applicable in such cases. The main defense relied upon is utter absence of intent to defraud the United States, the claim of Racicott being that unless such intent is shown the action for condemnation cannot be maintained.

Geo. B. Curtiss, U. S. Atty.

S. L. Wheeler, for defendant.

RAY, District Judge. Section 3082 of the Revised Statutes of the United States reads as follows:

"If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

Paragraph 493 of the act of October 1, 1890 (chapter 1244, 26 Stat. 603), entitled "An act to reduce the revenue and equalize duties. on imports and for other purposes," reads as follows:

"Articles the growth, produce, and manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; casks, barrels, carboys, bags, and other vessels of American manufacture exported filled with American products, or exported empty and returned filled with foreign products, including shooks when returned as barrels or boxes; also quicksilver flasks or bottles, of either domestic or foreign manufacture, which shall have been actually exported from the United States; but proof of the identity of such articles shall be made under general regulations to be prescribed by the Secretary of the Treasury; and if any such articles are subject to internal tax at the time of exportation such tax shall be proved to have been paid before exportation and not refunded."

Under this provision the Secretary of the Treasury made the following rules and regulations:

"(483) Exportations under this provision of law must be bona fide and not for the purpose of evading any revenue law. Merchandise, the growth, produce, or manufacture of the United States, ostensibly exported to ports in Canada in foreign vessels, but really shipped from one place in the United States to another by routes part water and part rail, and passing through foreign territory, are not bona fide exportations, and the merchandise is not entitled to free entry on importation.

"(484) If returned to the port of original exportation, the fact of regular clearance for a foreign destination must be shown by the records of the customs, except in regard to exports to Canada by ferryboat, and by the declaration of the person making the entry. But when the reimportation is made into a port other than that of original exportation, there shall be required, in addition to the declaration, a certificate from the collector and the naval officer (Cat. No. 773), if any, of the port where the exportation was made showing the fact of exportation from that port (and such certificate shall be furnished on application by the collector of customs at the port of exportation). If the importation be made within one year after the date of exportation, the collector shall require the importer to produce the affidavit (Cat. No. 594) of the exporter to the fact that such exportation was made in good faith and without any purpose or intention to reimport the merchandise. If such certificate of exportation cannot at once be procured, and the proof otherwise required be produced, free entry will be permitted on bond (Cat. No. 596) being given for the production of the certificate in a sum equal to what the duties would be if it were foreign merchandise. The issuance of such certificate shall be noted on the export manifest.

"(485) To guard against fraud, and to insure identity, the collector shall require, in addition to proof of clearance, the production of a declaration made by the foreign exporter of the goods before the United States consul of the fact that the merchandise was imported from the United States, and that it has not been advanced in value nor improved in condition by any process of manufacture or other means. But if it be impracticable to produce such declaration at the time of making entry, bond may be given for the production thereof. Collectors, with concurrence of naval officers, if any, may waive the record evidence of clearance and above declaration in the case of domestic goods on which no drawback has been allowed, valued at not over $100. In default of observance of the foregoing requirements imported merchandise will be treated as foreign."

Article 384 of the customs regulations of 1899, at page 123, provides as follows:

"All imported merchandise must be entered at the customhouse of the port of arrival."

Chapter 11 of the customs administrative act, as amended by the act of July 24, 1897, in sections 3095 to 3101 [U. S. Comp. St. 1901, pp. 2025, 2027], regulates the bringing of merchandise into the United States on the northern border from contiguous countries. The sections referred to admit the bringing of merchandise into the United States from Canada by means of vehicles or other means of transportation, but provide that such merchandise must first be reported to and entered at the customhouse nearest to the point at which they cross the border. Section 3100 provides:

"All merchandise and all baggage and effects of passengers and all other articles imported into the United States from any contiguous foreign country, except as hereafter provided, as well as the vessels, cars and other vehicles, and envelopes in which the same shall be imported shall be unladen in the presence of and be inspected by any inspector or other officer of the customs at the first port of entry or customhouse in the United States where the same shall arrive and to enable the proper officer thoroughly to discharge this duty he may require the owner or his agent or other person having charge or possession of any trunk, traveling bag or sack, valise, or other envelope or of any closed vessel, car or other vehicle to open the same or to deliver to him the proper key."

Section 2766 [U. S. Comp. St. 1901, p. 1861] provides as follows:

"The word 'merchandise' as used in this title may include goods, wares and chattels of every description capable of being imported."

And section 2767 defines the word "port" as follows:

"The word 'port' as used in this title may include any place from which merchandise can be shipped for importation or at which merchandise can be imported."

Paragraph 483 of the act approved July 24, 1897, c. 11, § 2, Free List, 30 Stat. 195 [U. S. Comp. St: 1901, p. 1680], entitled "An act to provide revenue for the government and to encourage the industries of the United States" reads as follows, leaving off the provisos which are entirely immaterial:

"Articles the growth, produce, and manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; casks, barrels, carboys, bags, and other vessels of American manufacture exported filled with American products, or exported empty and returned filled with foreign products, including shooks and staves when returned as barrels or boxes; also quicksilver flasks or bottles, of either domestic or foreign manufacture, which shall have been actually exported from the United States; but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury, but the exemption of bags from duty shall apply only to such domestic bags as may be imported by the exporter thereof, and if any such articles are subject to internal tax at the time of exportation, such tax shall be proved to have been paid before exportation and not refunded."

The facts upon which this proceeding is based are as follows:

(1) At some time prior to June 13, 1904, the Waltham Watch Company, of Waltham, state of Massachusetts, U. S. A., a corporation of said state engaged in the manufacture of watches and watch movements, manufactured at its place of business in Waltham aforesaid the 50 watch movements in question here, of the value of $230, and then exported them to the province of Quebec, Dominion of Canada, where they were held for sale or sold. Thereafter the

claimant, Joseph H. Racicott, of St. Johns, in said province of Quebec, purchased and became the owner of said watch movements; and on the 13th day of June, 1904, he knowingly sent the same, by a liveryman in his employ, who carried and transported them by team, from St. Johns, Dominion of Canada, to Rouses Point, in the state of New York, within the United States of America, to be sent from that place to the city of New York, in the United States, by express. For his services in such matter the claimant paid said liveryman the sum of $5.

(2) The Waltham Watch Company had, it is alleged by the claimant, Racicott, and conceded by the United States, for the purposes of this case, a black list, so called, which contained and in which were entered from time to time the names of persons who, having purchased goods of this character in Canada, without any change thereof, had theretofore sent or were then engaged in sending or exporting them from Canada aforesaid into the United States. To each and every person whose name was upon this list the said Waltham Watch Company, it is alleged, refused to sell, in Canada or elsewhere, watch movements of this character or make. This allegation of Racicott and concession by the United States for the purposes of this case was made in open court in this case, to which the Waltham Watch Company is not a party, and in which it is in no way represented. It was not represented when the concession was made, and is in no way or sense bound thereby. Since the trial in open court the said Waltham Watch Company has been permitted to enter its denial of the existence of such a black list or of any list of that nature. The company asserts that such a list never existed. The watch movements in question, and all movements of that class or description manufactured for said company, were made for the foreign market, and not for sale or use within the United States. It was for the interest of the said company, it is alleged and conceded for the purposes of this case, not to have such movements sold on the market in the United States; and the said Racicott, by purchasing same in Canada and bringing or sending them back into the United States, without any change in their condition whatever, could make a gain or profit.

(3) The 50 watch movements in question, at the time and place and in the manner aforesaid, were sent and brought or returned into the United States by said claimant without any change whatever, and when so sent into the United States by said Racicott the said watch movements were in the same condition in all respects as when they were exported into Canada by said company from the United States. No labor or material had been added, nor had anything been taken therefrom, and they had not been advanced in value by any process of manufacture.

(4) The said claimant, Joseph H. Racicott, sent the said watch movements into the United States in the said way and manner for the purpose of preventing the Waltham Watch Company, of Waltham, Mass., from learning that he was returning to the United States watch movements which said company had exported to Canada, and to avoid being placed on the said alleged black list by the

Waltham Company at their office in Canada, and thereby prevented from purchasing of said company more of their watch movements in that dominion. He believed such a list existed.

(5) At the time the said claimant so sent said movements into the United States he had full knowledge of the aforesaid regulations of the Secretary of the Treasury of the United States, which require a consular certificate and proof of identification of the goods as having been previously exported into Canada from the United States, and entry of the same at the United States customhouse after being imported into the United States, and proof that they had not been advanced in value by any process of manufacture. He was advised before sending them into the United States in the mode and manner aforesaid that he had the legal right so to do, and believed such advice. He did not pay or tender the consular fee of $1 for a consular's certificate, or enter or offer to enter said goods at any customhouse or port of entry. In no way did he comply with or offer to comply with such regulations.

(6) On the 14th day of June, 1904, said watch movements were seized by the deputy collector of customs of the United States at Rouses Point, in the state of New York, on the claim that they had been improperly brought into the United States.

(7) On the 17th day of June, 1904, said Joseph H. Racicott filed with the collector of customs of the district of Champlain, state of New York (the district into which such merchandise was brought, and in which it was seized), a claim to such property, as owner thereof, and gave the bond required, and same was duly filed and approved by the proper officer, and such seizure was immediately reported to the proper officer of the government of the United States, and the said watch movements were, and still are, detained by the collector of the port of Champlain.

(8) Before such seizure such watch movements, by authority and direction of said claimant, had been delivered to an express company at Rouses Point aforesaid for shipment to, and were addressed to, one Charles H. Keen, at 180 Broadway, New York. It must be distinctly understood that the above statement of fact as to the existence of a black list is based entirely on the assertion of Racicott, the claimant of the goods, and the concession of the government made for the purposes of this case, and not on the testimony of any witness. Such statement should in no way affect or prejudice the said Waltham Watch Company.

The claimant insists that the said watch movements were not brought into the United States either "fraudulently" or "knowingly contrary to law" or "contrary to law," and therefore the provisions of section 3082 of the Revised Statutes of the United States, above quoted, were not violated. He also insists that the rules and regulations above referred to, and in part quoted, were not adopted under and pursuant to, or after or in anticipation of, the enactment of the tariff act of July 24, 1897, containing the clause or subdivision quoted, which authorizes the making of rules and regulations by the Secretary of the Treasury, but under the prior tariff act (that of 1890), the applicable section of which has been quoted,

and that, as the quoted section or subdivision 483 of the act of 1897 covers the whole subject included in and covered by section or subdivision 493 of the act of 1890, its enactment into law repealed the former by implication, and the rules and regulations made by the Secretary of the Treasury thereunder and by virtue thereof fell with it, being but creatures thereof, dependent upon it for life and vitality, and that when these watch movements were brought or sent into the United States by the claimant and owner, on the 13th day of June, 1904, there were no rules and regulations on the subject in force.

It is clear that when the tariff act of July 24, 1897, went into effect, it became a substitute for and took the place of the tariff act of 1890. It is true that subdivision 483 of the act of 1897, in all essential particulars, reads the same as subdivision 493 of the act of 1890, and yet the one is different from the other in some respects. It is unnecessary to dwell on the differences, as they are in no way material here, and it is undoubtedly true that the one act covering the entire subject embraced in the other wholly repealed that other. Assuming that the enactment of subdivision 483 of the one repealed subdivision 493 of the other, there was no moment when the same statutory law, so far as all questions involved here are concerned, was not in force, or when the Secretary of the Treasury was not authorized to prescribe general rules and regulations as to the bringing of "articles, the growth, produce and manufacture of the United States," into the United States after same had been exported therefrom, in all cases where such articles or merchandise had not been "advanced in value or improved in condition by any process of manufacture or other means." It will be noted that the act itself, speaking of articles that may come in free of duty, after specifying generally articles, "the growth, produce and manufacture of the United States when returned after having been exported without," etc., says, "but proof of the identity of such articles shall be made" under rules, etc., and then of the bags that may come in free only certain ones may come in, and, "if any such articles are subject to internal tax at the time of exportation, such tax shall be proved to have been paid before exportation and not refunded." The act itself requires the proof to be made, but the rules to be adopted are to prescribe the time, place, and mode of making such proof, etc. In short, there were conditions precedent demanded by the act itself to be performed by the claimant before he was entitled to bring these watch movements into the United States, either as dutiable goods or goods free of duty, before he could bring them in at all without violating law—in short, without bringing them in "contrary to law." It is not for the citizen and resident of the Dominion of Canada to say, when he desires to bring or import goods manufactured in the United States, and then exported to and owned in Canada, back into the United States for sale—same not having been changed or improved in condition or advanced in value—that "the Secretary of the Treasury of the United States has not made rules and regulations as to the time and place and the mode and manner when, where, and how I am to take or im-

port such goods into the United States, and when, where, and how I am to make proof of identity, etc., as required by the act of Congress of the United States; and therefore, until he does, I am at liberty to take or send such goods into the United States at any place, or at such place as suits my convenience and serves my interest, without making such proof." When such sender or importer, the claimant in this case, so acts, he violates law, and knowingly imports and brings into the United States merchandise contrary to law, and in violation of the provisions of section 3082 of the Revised Statutes of the United States. In short, that section may be violated, and the merchandise brought into the United States "contrary to law," even if the Secretary of the Treasury has not made rules and regulations as authorized by paragraph 483 of the tariff act of 1897. But it is not intended to intimate or hold that the rules and regulations in evidence, and in part quoted, made by the Secretary of the Treasury after the enactment into law of paragraph 493 of the tariff act of 1890, were not in full force and effect from and after the enactment of the tariff law of 1897. These rules and regulations were not a part of the act repealed, but the rules and regulations made by authority of law bearing on and regulating that subject; and even should it be conceded that the Secretary of the Treasury was and is without power to make rules and regulations on that subject, independent of the provisions of the tariff act quoted, it cannot be held that when the act of 1897 went into effect the rules and regulations made after the enactment of the law of 1890 fell, and became inoperative and void. It was within the power of the Secretary of the Treasury to continue them in force by adoption, and by continuing to act under and by continuing to enforce them. In this case it is not shown that these rules and regulations were not properly adopted and promulgated.[1]

Then, again, section 304 of the Customs Regulations of 1899 above quoted provides that all merchandise imported into the United States "must be entered at the custom house at the port of arrival." It cannot be that a resident and citizen of the Dominion of Canada may go wide of the customhouses established by the government of the United States, and bring or send merchandise into the United States which is entitled to come in free of duty if certain proof is made, without making the proof required by law, at any point he chooses, and at any time he sees fit to select, and say: "I have violated no law. I have not knowingly brought or imported merchandise into the United States 'contrary to law.'" It is no answer to say: "In fact, the merchandise was entitled to come in free. Proof was unnecessary. The facts existed." Goods entitled to come in free are imported as much as those which pay duty. The requirement of law is as positive that the one class shall come in through the customhouses as that the other shall. This is the policy of the government in the enforcement of its laws, in the collection of its revenues, in the protection of its interests. If it be

---

[1] Note Treasury Circular No. 108, T. D. 18,201, dated July 24, 1897, continuing in force under the tariff act of that date "all existing regulations relating to the importation of merchandise."

true that an intent to defraud the United States must exist—and it is not held or intended to be held in this case that such intent is necessary—the intent is sufficiently shown here.    An intent to defraud the United States may be shown without proving a purpose to deprive the government of property or of money or of revenue. Hyde v. Shine (Sup. Ct. U. S. May 29, 1905, No. 406) 199 U. S. 62, 25 Sup. Ct. 760, 49 L. Ed. ——.

But it is unnecessary to discuss that question here.    The proof and admission is that for the purpose of serving his own pecuniary interests the claimant knowingly evaded the customhouses of the United States and its officers, and knowingly failed to observe or comply with positive provisions of law, and also certain rules and regulations promulgated by the Secretary of the Treasury of the United States, and under which the officers of the government were acting.    He was knowingly and willfully depriving the government of the United States of its right and privilege, through officers of its own selection, to protect its interests and the interests of all its citizens, by preventing it from enforcing its laws duly enacted, and its policy duly adopted, for the purpose of preventing frauds upon the revenues by the importation of dutiable goods without the payment of duty.    In this instance the government may not have been defrauded of any money or property, waiving the question of the consular fee for a certificate; but its laws were defied and violated, and the United States was deprived of its right to ascertain and determine the character of the merchandise brought or sent in, and whether or not it was subject to the payment of duty, or entitled to come in under any condition.    There was an intent to violate the law, to the injury of the United States and one of its officers, for the gain and advantage of this claimant.

Section 2802 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1873] provides as follows:

"Whenever any article subject to duty is found in the baggage of any person arriving within the United States, which was not, at the time of making entry for such baggage, mentioned to the collector before whom such entry was made, by the person making entry, such article shall be forfeited, and the person in whose baggage it is found shall be liable to a penalty of treble the value of such article."

In Dodge v. United States, 131 Fed. 849, 65 C. C. A. 603 (C. C. A. Second Circuit), it was held:

"In construing the provisions in paragraph 697, Tariff Act July 24, 1897, c. 11, § 2, Free List, 30 Stat. 202 [U. S. Comp. St. 1901, p. 1689], that $100 in value of articles purchased abroad by returning residents of the United States may be admitted free of duty, held, that it is the passenger's duty to enter and declare the value of such articles, whether they cost more than $100 or not, and that when not so declared they are subject to forfeiture under section 2802, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1873].

"In construing section 2802, Rev. St. U. S. [U. S. Comp. St 1901, p. 1873], providing for the forfeiture of 'any article subject to duty * * * found in the baggage of persons arriving in the United States, which was not at the time of making the entry for such baggage mentioned to the collector before whom the entry was made,' held, that fraudulent intent is not an ingredient of the cause of forfeiture; also that dutiable articles found in the handbag of a passenger after said passenger had entered other dutiable articles were subject to the enforcement of the penalties prescribed by said section."

The same principle was involved there as is involved here. It is undoubtedly true that the claimant must have had a bad mind, an unlawful purpose, but it is no defense that his main purpose was to escape the black list mentioned. United States v. Kirby, 7 Wall. (U. S.) 482, 19 L. Ed. 278. There it was held as to "knowingly and willfully obstructing the mail," that, "When the acts which create the obstruction are in themselves unlawful, the intention to obstruct will be imputed to their author, although to attain other ends may have been his primary object." Here the primary object of the claimant was to keep from the alleged black list, the existence of which is denied by the Waltham Watch Company; but in so doing he knowingly violated the law, and intended so to do. "Knowingly" is frequently used, as here, in contradistinction to "innocently," "ignorantly," or "unintentionally." United States v. Claypool (D. C.) 14 Fed. 127. See Commonwealth v. Boynton, 12 Cush. 499.

In United States v. McKim, Fed. Cas. No. 15,693, it was held that:

"The words 'knowingly and willfully,' as used in a revenue law providing a penalty for so constructing cisterns in a distillery as to permit the abstraction of spirits, do not require an intent to defraud the revenue, but the penalty prescribed by the act is incurred and the offense is complete when the defendants have left undone those things which they ought to have done, and done those things which they ought not to have done, without any fraudulent or criminal intent."

Valuable remarks and references to cases on the question of intent will be found in 2 Lewis' Sutherland Statutory Construction (2d Ed.) §§ 526, 527.

In Regina v. Tolson, L. R. 23 Q. B. Div. 168, 40 Alb. Law J. 250, it was said by Willis, J.:

"The intention may belong to one or other of two classes. It may be to do a thing wrong in itself and apart from positive law, or it may be to do a thing merely prohibited by statute or by common law, or both elements of intention may coexist with respect to the same deed."

The claimant here knew that in so acting as to escape the said alleged black list of the Waltham Watch Company, the existence of which is denied by the Waltham Watch Company—that is, in so acting as to serve and protect his own personal, private, business interests—he was violating the laws of the United States, and doing what he was forbidden to do, and failing to do what he was commanded to do by those laws. Conceding that to constitute a criminal offense in violating a statute there must be "a criminal intent," or a "bad mind," it seems clear to this court that, where the statute offended against fails to specify a particular intent as the one which must exist in order to make the doing of the act criminal, the knowing and willful violation of the statute (if not justified) for some personal end or gain shows the bad mind and establishes the criminal intent. Where acts constituting a crime at common law are described in general terms in a statute of the United States, and made a criminal offense, and a criminal intent is not in terms or by necessary implication mentioned as an ingredient of the offense, such intent must be read into the statute and proved on the

trial in those cases only where such intent was a necessary ingredient of the common-law offense. United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135. The acts done by the claimant here did not constitute an offense at common law. By section 16 of the act of June 22, 1874 (18 Stat. 189, c. 391), it was, in substance and effect, provided that in all actions, suits, and proceedings in the courts of the United States for the forfeiture of any goods or chattels the question should be submitted whether or not there was an actual intent to defraud the United States, and, if no such intent was found, there should be no forfeiture. This provision was repealed. United States v. Ortega (D. C.) 66 Fed. 713.

Sections 6 and 9 of the customs administrative act of 1890 (26 Stat. 131, c. 407), as amended by the act of July 24, 1897 (30 Stat. 211 [U. S. Comp. St. 1901, p. 1886]), have no application in this case.

The court finds and holds that, notwithstanding the fact that the primary intent or purpose of the claimant was to escape being put on the alleged black list of the Waltham Watch Company, the existence of which is denied, and no proof has been given of its existence, except the admission of the said Racicott and of the government for the purposes of this case—the Waltham Watch Company denying its existence—he brought in and imported the 50 Waltham watch movements into the United States knowingly, contrary to law, and with an intent and purpose to defy and evade the law, and that the watch movements described in the information are forfeited to the United States. Judgment accordingly is directed.