(C. D. 105)

S. HANDAL & BROS. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 21, 1939)

*James W. Bevans* for the plaintiffs.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Marcus Higginbotham, Jr.,* special attorney), for the defendant.

Before McClelland, Sullivan, and Brown, Judges

McClelland, Presiding Judge: These protests are directed against the refusal of the collector of customs at the port of New York to allow drawback of the duties paid on the importation of certain laces and lace trimmings claimed to have been manufactured into lace bedspreads, curtains, valances, etc., and to have been exported for benefit of drawback under the provisions of section 313 of the Tariff Acts of 1922 and 1930.

From an examination of the official papers it appears that drawback was allowed on numerous items of imported material claimed to have been used in the manufacture of articles exported and covered by the drawback entries involved, but that drawback was disallowed on the particular items in issue on the ground that insufficient identification had been made of the imported material to connect it with the exported articles claimed to have been manufactured with the use thereof.

It also appears from the record that a so-called "blanket" method of identification was adopted by the customs authorities whereby in lieu of identifying each particular lot of manufactured articles with a particular importation, each lot of manufactured articles made with the use of a given style of lace was charged off against the total quantity of that style of lace imported provided that all importations of the style of lace took place within a single year. The record shows that in disallowing drawback on the involved items the collector followed directions so to do from the Treasury Department and that such disallowance was based upon the fact that the styles of material involved had been imported during a period in excess of one year.

From the record as made we think the conclusion is justified that the detailed requirements preliminary to the making of the drawback entries in this instance were complied with, and that the only question remaining to be determined was whether or not plaintiffs established by competent evidence compliance with the statute and customs regulations with respect to the identification of the merchandise used in the manufacture of the exported articles.

The record discloses that the laces involved were imported by Max Mandel Laces, Inc., in the years from 1925 to 1932. In 1933 the laces were sold to S. Handal & Bros. and certificates of delivery were prepared from the records of Max Mandel Laces, Inc., and delivered along with the laces to Saleh Handal, a partner in the firm of S. Handal & Bros. Mr. Handal testified that he checked the laces received with the descriptions and quantities shown on the certificates of delivery and after finding them to be correct filed the certificates at the customhouse.

Following the sale and delivery to S. Handal & Bros. the laces were transferred to the premises of the Rainbow Curtain Corporation,

apparently a separate business enterprise which, among other things, acted as the manufacturing department for S. Handal & Bros. From the testimony of the witness Handal it appears that all of such merchandise as was transferred to the Rainbow Curtain Corporation was so transferred with the single purpose of having articles such as lace bedspreads, curtains, valances, scarfs, and tablecloths manufactured therefrom, and that to a greater or lesser extent all such manufacture was done under his personal supervision.

Mr. Handal also testified that he supervised the preparation of the certificates of manufacture from the Rainbow Curtain Corporation's records, which in turn were made up from the data received from Max Mandel Laces, Inc., and the actual manufacturing records. The record establishes that the articles in issue were exported.

The certificates of delivery herein contain the following information:

    Entry Number (of importation)
    Steamer
    Date (of importation)
    Case
    Style Number
    Yards, Meters, or Dozen (delivered)

The certificates of manufacture contain the following information:

Imported Materials Used In Manufacturing Articles:
    Style Number (of lace)
    Width
    Color
    Yards Received
    Style Number (of lace trimming)
    Color
    Yards Received

Articles Manufactured and Manufacturing Data:
    Style and Number (of article manufactured)
    Size, etc., of above
    Total Imported Yards (of lace) Used In Manufacture
    Total Imported Yards (of lace trimming) Used in Manufacture
    Waste of No Value
    Waste Trimming of No Value

Since data under the foregoing headings was supplied as to all of the articles manufactured it is at once apparent that no more complete information was furnished with respect to the identification of the exported articles on which drawback was allowed than was furnished with respect to the exported articles on which drawback was disallowed. If identification was accepted as complete as to the former we are at a loss to understand why the mere fact that merchandise had been imported during a period in excess of a year should be considered as rendering insufficient identification otherwise sufficient.

We are not unmindful of the fact that under the provisions of section 313 of the Tariff Acts of 1922 and 1930 the Secretary of the Treasury is authorized to prescribe regulations governing·the identification of imported merchandise used in the manufacture of articles entitled to drawback. Our attention has not been called to any regulation of the Secretary of the Treasury in force during the period here involved limiting the use of the method of identification adopted in this case to articles imported within a period of a single year. If the method was considered sufficient for the purpose of identification of merchandise imported within a period of a year, we can see no reason why it was not sufficient for the purpose of identifying any merchandise otherwise entitled under the law to be manufactured and exported with benefit of drawback.

The protests are therefore sustained and the decision of the collector is reversed. Judgment will issue accordingly.