(C. D. 822)

SIMON'S RICE MILL *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 23, 1943)

*Philip Stein* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *John J. McDermott*, special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

WALKER, Judge: These protests are directed against the refusal of the collector of customs at the port of New Orleans, La., to allow drawback under the provisions of section 313 of the Tariff Act of 1930 upon the exportation of certain burlap bags made in the United States with the use of imported merchandise, namely, burlap.

The plaintiff is a rice miller, selling rice in bags to both the domestic trade and the export trade. It purchased the bags in question from various manufacturers, and claims that it filled them with rice and exported them and is entitled to refund of 99 per centum of the duties paid on the imported burlap used in their manufacture.

On the part of the Government, it is contended that the exported bags were not sufficiently identified with the imported burlap so that

determination could be made as to the precise importations of burlap covered by the particular shipments of bags, as required by the pertinent customs regulations.

So far as pertinent, the statute reads:

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties * * *.

* * * * * * *

(i) REGULATIONS.—The Secretary of the Treasury is authorized to prescribe regulations governing (1) the identification of imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties, the ascertainment of the quantity of such merchandise used, of the time when such merchandise was received by the manufacturer or producer of the exported articles, and of the amount of duties paid thereon, the determination of the facts of the manufacture or production of such articles in the United States and their exportation therefrom, the time within which drawback entries on such articles shall be filed and completed, to entitle such articles to drawback, and the payment of drawback due thereon; * * *.

At the opening of the trial, the following concession was placed on the record:

Mr. STEIN: I understand if the court please, that the Government will concede in these cases which involve a question of drawback, that all the regulations were complied with, with the exceptions alleged by the Government, that the matter of identification, and the manner in which the merchandise was kept in the premises of the exporter was not in accordance with the Government's requirements, is that correct?

Mr. WEIL: That is correct. Upon the advice of Mr. Anderson, the Government agent, the Government so stipulates. (R. p. 2.)

In the brief filed on behalf of the plaintiff, article 1020 of the Customs Regulations of 1931, as amended August 21, 1936 (T. D. 48490), is alleged to be the regulation with reference to identification which is involved, in view of the fact that it was "in effect at the time of the importation of the dutiable burlap manufactured into the bags at bar." In the brief filed on behalf of the defendant article 1041 of the Customs Regulations of 1937 is set forth as one of the regulations involved, since it was "in force and effect at the time of the exportation of the merchandise at bar." The language of these regulations is identical.

The articles enumerated were general regulations prescribed by the Secretary of the Treasury under the power conferred upon him in subsection (i) of section 313, supra, relating to the identification of imported merchandise and ascertainment of quantities entitled to drawback. However, it appears that on January 19, 1923, there were issued, under similar authority conferred upon the Secretary of the Treasury in section 313 of the Tariff Act of 1922, what are described

in the headnote as "General regulations covering the payment of drawback on bags manufactured with the use of imported burlap or other textile material," and these regulations are published in T. D. 39415 (43 Treas. Dec. 40). They were apparently never revoked, but, on the contrary, were adopted and continued to be enforced after the passage of the Tariff Act of 1930 and the promulgation of the Customs Regulations of 1931 and 1937, and, being directed toward the particular type of merchandise here involved, take precedence over the regulations for identification of merchandise in general contained in the articles cited above. See T. D. 44090, 57 Treas. Dec. 924; T. D. 49639, 74 id. 1; and *United States* v. *Fifty Waltham Watch Movements*, 139 Fed. 291, T. D. 26546, 9 Treas. Dec. 1163. We might also add that in each of the drawback entries involved there is a statement that drawback is claimed under T. D. 39415.

The pertinent portion of T. D. 39415 reads as follows:

\* \* \*. Each lot of imported material received by a manufacturer shall be given a lot number and kept separate from other lots until used, and the records of the manufacturer shall show as to each manufacturing lot or period of manufacture, the quantity of material used from each import lot and the number of each kind and size of bags obtained. A certificate of manufacture shall be filed covering each manufacturing lot or period of manufacture as the case may be.

All bags manufactured for the account of the same exporter during a specified period may be designated as one manufacturing lot and covered by one certificate of manufacture and delivery. *All exported bags must be identified by the exporter with the certificate of manufacture covering their production.* [Italics added.]

As hereinbefore stated, the particular bags here in question were manufactured by various manufacturers, and it is clear from the record that there is no question but that the said manufacturers kept such records as would enable them to identify the bags manufactured and sold by them with the imported material used in their manufacture. The bags were sold by the said manufacturers to the plaintiff, and the sole question at issue would appear to be whether the plaintiff kept such records as would enable it to identify the various bags exported with the certificates of manufacture covering their production, as required by the last sentence of T. D. 39415 quoted above.

No testimony was offered to show just what kind of records were kept in this connection or whether they were sufficient to enable the plaintiff to meet the requirement of the regulation. As to the records, Theophas Simon, of the plaintiff firm, testified as follows:

Q. Do you keep certain records in your office showing how you purchased bags, and how you used them in packing rice, and where you sent them?—A. No, we do not. We ship all over the United States; in domestic business we do not.

Q. You only keep them with respect to your export business?—A. Yes.

Q. Do you have such records showing what bags you buy and what bags you export with rice in them?—A. Yes.

Q. And those records are where?—A. In Crowley.

Q. At your mill?—A. Yes, sir.

Q. Who keeps those records?—A. They are kept in the safe.

Q. Who made the entries in your records in 1937 and 1938? I think it is the latter part of 1937, and the first part of 1938.—A. The bookkeeper.

Q. Is that bookkeeper still with you?—A. Yes, but he is sick in bed, since December 10th. (R. p. 43.)

   *        *        *        *        *        *        *

X Q. You have records which you say are kept by your bookkeeper, is that right?—A. The bookkeeper is really the shipping clerk, not the shipping clerk, the billing clerk.

X Q. They keep the records?—A. Yes.

X Q. Did they keep the records in 1937 and 1938?—A. Yes, sir.

X Q. Are they the ones kept by the sick bookkeeper who is now in bed?—A. No, the bookkeeper is sick in bed.

X Q. Did you bring the records pertaining to these various bags over here with you?—A. No. (R. p. 53.)

The record does not indicate any attempt on the part of the plaintiff to introduce the records in question to establish the manner in which they were kept, or otherwise to identify the bags exported with the certificates of manufacture covering their production. Plaintiff apparently relies upon the facts, which appear sufficiently in the record, that the manufacturers in question used only imported material in the manufacture of their bags, and that the bags in question were actually exported, to entitle it to drawback. These facts, standing alone, are not sufficient to give the right to recover, if there are in existence regulations of the Secretary of the Treasury, issued under proper authority, which are reasonable, and mandatory in character, as to the method of identification to be used. See *United States* v. *Ricard-Brewster Oil Co.*, 29 C. C. P. A. 192, C. A. D. 191, and cases therein cited.

The purpose of the regulations involved is obviously to connect the particular bags exported with their covering certificate of manufacture, and, through this, in turn, with the particular importation of material from which they were made. We see nothing unreasonable or unfair in such requirement, which manifestly was designed to prevent multiple claims covering the same imported material, and assist in proper administration of accounts in the hands of customs authorities.

Plaintiff relies upon the cases of *MacAndrews & Forbes Co. et al.* v. *United States*, 70 Treas. Dec. 82, T. D. 48427, and *S. Handal & Bros.* v. *United States*, 2 Cust. Ct. 125, C. D. 105. In the *MacAndrews & Forbes Co.* case the proof as to identification of the imported material with the exported articles was that the plaintiffs never used in the manufacture of such articles anything but imported material. The decision in that case was based upon the decision in the case of *Gulf Refining Co.* v. *United States*, 69 Treas. Dec. 1101, T. D. 48399. In the latter case it was found that at the time of importation, manu-

facture, and exportation of the oil there in question there were in existence no general regulations prescribed by the Secretary of the Treasury with respect to the identification of merchandise subject to drawback with which an exporter of merchandise had to comply prior to making his drawback entry. In the absence of such regulations, the court accepted as sufficient proof under the statute evidence that no other than imported crude petroleum was ever pumped into the storage tank from which the crude petroleum used in the manufacture of the fuel oil exported was taken.

Shortly after these decisions, and on August 21, 1936, T. D. 48490, *supra*, was promulgated and contained regulations prescribed by the Secretary of the Treasury relating to the identification of imported merchandise and ascertainment of quantities entitled to drawback. It will thus be seen that the decisions in the *MacAndrews & Forbes Co.* and *Gulf Refining Co.* cases were predicated on an absence of regulations, which is not the case with respect to the situation at bar. As has been said, T. D. 39415, relating to the identification of materials used in the manufacture of burlap bags, was in existence during the time of importation, manufacture, and exportation of the materials and merchandise in issue. Hence the cited cases are not controlling here.

In the *S. Handal & Bros.* case, *supra*, it appeared that the merchandise was also imported prior to the time general regulations governing identification of merchandise claimed to be entitled to drawback were prescribed, that is to say, the merchandise was imported in the years from 1925 to 1932. It also appeared that a "blanket" method of identification was adopted by the customs authorities—

* * * whereby in lieu of identifying each particular lot of manufactured articles with a particular importation, each lot of manufactured articles made with the use of a given style of lace was charged off against the total quantity of that style of lace imported· provided that all importations of the style of lace took place within a single year. * * *.

Since no more complete identification was furnished with respect to the manufactured articles made from styles of lace imported within a single year than was furnished with respect to such articles made from styles imported over a period in excess of a year, and the former were admittedly sufficiently identified to permit recovery, the court ruled that the arbitrary limitation of importation within a single year was unwarranted. The court also pointed out that no regulation governing the identification of imported merchandise used in the manufacture of articles entitled to drawback had been called to its attention which limited the use of the method of identification adopted to merchandise imported within a period of a single year. It therefore appears that the situation in the *S. Handal & Bros.* case, like that which obtained in

each of the two previously cited, is distinguishable from that in the case at bar.

Compliance with regulations such as those here involved has been consistently held to be a condition precedent to the right to recover drawback. *United States* v. *Ricard-Brewster Oil Co., supra.* On the record as made, we have no other course than to hold that plaintiff has failed to prove such compliance, and the protests are therefore overruled. Judgment will issue accordingly.