INTERNATIONAL RY. CO. v. DAVIDSON, Collector of Customs, et al.

(Circuit Court of Appeals, Second Circuit.  April 20, 1921.)

No. 216.

1. **United States ⊚⇒31—Regulations by executive department heads have force of law, regardless of form.**

  Regulations by heads of executive departments, under Rev. St. § 161 (Comp. St. § 235), for the performance of the business of the department, have force of law, and need not be promulgated in any set form or in writing.

2. **Customs duties ⊚⇒53—Regulations by Secretary of the Treasury detaining baggage of arrivals from Canada on Sundays and holidays held lawful.**

  Even if Act Feb. 13, 1911, § 5, as amended by Act Feb. 7, 1920, relating to customs inspections at night and on Sundays and holidays, is limited to vessels and conveyances conveying cargo, the Secretary of the Treasury had authority, under Rev. St. § 161 (Comp. St. § 235), for the purpose of enforcing the statute regulating the importation of merchandise on the northern frontier adjacent to Canada, and Comp. St. § 5807 et seq., to adopt regulations providing that all baggage of passengers arriving across the international bridge by trolley or by other vehicles, and all such vehicles, except trolley cars, arriving on Sundays or holidays, should be detained for inspection until the next day, unless the owners of the bridge should agree to pay the compensation fixed by the Secretary for customs inspectors to be kept on duty at the bridge at night and on Sundays and holidays.

3. **Customs duties ⊚⇒63—Government inspection is prerequisite to entry of nondutiable merchandise.**

  Government inspection is an essential prerequisite to entry of imported goods, whether they are dutiable or not, since inspection is necessary to determine whether they are in fact nondutiable.

4. **Customs duties ⊚⇒60—Bridge owner cannot question regulations as to inspection of baggage or vehicles coming across bridge.**

  The owner of a bridge between United States and Canada has no standing in court to question the validity of regulations of the Secretary of the Treasury for the inspection of private conveyances or of personal baggage brought over the bridge.

Appeal from the District Court of the United States for the Western District District of New York.

Suit for injunction by the International Railway Company against George G. Davidson, individually and as Collector of Customs of the Port of Buffalo, and others.  From a decree dismissing the bill for lack of equity (271 Fed. 313), plaintiff appeals.  Affirmed.

Cohn, Chormann & Franchot, of Niagara Falls, N. Y. (Basil Robillard, of Niagara Falls, N. Y., of counsel), for appellant.

Stephen T. Lockwood, U. S. Atty., of Buffalo, N. Y. (J. T. Walsh, of Buffalo, N. Y., of counsel), for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge.  This is an appeal from a decree of the District Court of the United States for the Western District of New York, dismissing the plaintiff's bill for lack of equity.  The international Railway Company owns and operates two public toll bridges across

the Niagara river between the United States and Canada, upon each of which it also operates a line of passenger trolley cars. The government had always maintained customs inspectors at the American end of the bridges, both day and night and on Sundays and holidays. Congress, by the Act of February 7, 1920, c. 61, 41 Stat. 402, amended section 5 of the Act of February 13, 1911, c. 46, 36 Stat. 901, so as to read:

"The Secretary of the Treasury shall fix a reasonable rate of extra compensation for overtime services of inspectors, storekeepers, weighers, and other customs officers and employees who may be required to remain on duty between the hours of five o'clock post meridian and eight o'clock ante meridian, or on Sundays or holidays, to perform services in connection with the lading or unlading of cargo, or the lading of cargo or merchandise for transportation in bond or for exportation in bond or for exportation with benefit of drawback, or in connection with the receiving or delivery of cargo on or from the wharf, or in connection with the unlading, receiving, or examination of passengers' baggage, such rates to be fixed on the basis of one-half day's additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o'clock post meridian (but not to exceed two and one-half days' pay for the full period from five o'clock post meridian to eight o'clock ante meridian), and two additional days' pay for Sunday or holiday duty. The said extra compensation shall be paid by the master, owner, agent, or consignee of such vessel or other conveyance whenever such special license or permit for immediate lading or unlading or for lading or unlading at night or on Sundays or holidays shall be granted to the collector of customs, who shall pay the same to the several customs officers and employees entitled thereto according to the rates fixed therefor by the Secretary of the Treasury: Provided, that such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual lading, unlading, receiving, delivery, or examination takes place or not. Customs officers acting as boarding officers and any customs officer who may be designated for that purpose by the Collector of Customs are hereby authorized to administer the oath or affirmation herein provided for, and such boarding officers shall be allowed extra compensation for services in boarding vessels at night or on Sundays or holidays at the rates prescribed by the Secretary of the Treasury as herein provided, the said extra compensation to be paid by the master, owner, agent, or consignee of such vessel: Provided, further, that in those ports where customary working hours are other than those hereinabove mentioned, the collector of customs is vested with authority to regulate the hours of customs employees so as to agree with prevailing working hours in said ports, but nothing contained in this proviso shall be construed in any manner to affect or alter the length of a working day for customs employees or the overtime pay herein fixed."

[1] Section 161, U. S. Revised Statutes (Comp. St. § 235), provides:

"The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

Regulations under this section have the force of law and need not be promulgated in any set form or in writing. Haas v. Henkel, 216 U. S. 462, 480, 30 Sup. Ct. 249, 54 L. Ed. 569. 17 Ann. Cas. 1112; Boske v. Comingore, 177 U. S. 459, 467, 20 Sup. Ct. 701, 44 L. Ed. 846. After the passage of this act the defendant Davidson, Collector of Customs for the Ninth Customs District, by direction of the Secretary of the Treasury, notified the plaintiff:

"That unless the complainant would pay two days' pay for each Sunday or holiday for each customs officer performing service in connection with the said company, importation of all merchandise on Sundays and holidays would be stopped, and sent the following instructions to the deputy collector at Niagara Falls:

"1. Trolleys may come in after full examination.

"2. Trolley passengers may come in after surrendering all baggage and effects, to be examined after 8:00 a. m. on the day succeeding each Sunday or holiday.

"3. Foot passengers may come in after surrendering all baggage and effects, to be examined after 8:00 a. m. on the day succeeding each Sunday or holiday.

"4. All vehicular passengers except trolley passengers may come in after surrendering all baggage and effects, to be examined after 8:00 a. m. on the day succeeding such Sunday or holiday. All such vehicles will not be allowed to enter the United States until after their examination on the day succeeding each Sunday or holiday.

"5. All outgoing traffic may proceed as usual.

"6. There must be no examination of incoming passengers' baggage, freight or merchandise, no matter how small, including autos, teams and other vehicles except trolleys.

"7. Any baggage left for examination by customs officers will be held at owner's risk.

"8. You will use all reasonable means to advise all persons leaving the United States by way of bridges that there will be no examination of passengers' baggage and vehicles other than trolley cars until the day succeeding each Sunday or holiday.

"9. You will understand that you are not to interfere with passenger traffic but must postpone all examinations until the day succeeding each Sunday or holiday.

"10. These instructions are not confidential and may be shown to any interested party, and that such instructions were issued under orders of the United States Treasury Department, and as collector of customs."

Thereupon the International Railway Company filed this bill, praying that the defendant be restrained from enforcing the regulations. Judge Hazel entered a decree dismissing the bill for want of equity.

[2] The plaintiff contends that the act of 1911 as amended by the act of 1920 contemplates only vessels and conveyances carrying cargo and that the Secretary of the Treasury has no authority under it to make the regulations in question applying to trolley cars, automobiles and other vehicles and passenger baggage. Assuming this to be so, we still think that the Secretary may make the regulations in question under section 161 of the Revised Statutes for the purpose of enforcing the statutes regulating the importation of merchandise on the northern frontier of the United States adjacent to Canada (sections 5807–5812, U. S. Comp. Stat.), which apply not only to cargo laden vessels and conveyances, but to all conveyances and passenger baggage.

It would, of course, be impossible to maintain custom inspectors day and night, Sundays, and holidays at every road crossing the northern frontier or at contiguous points along the shore of every lake. It is reasonable to maintain such inspection only where, in the discretion of the Secretary of the Treasury, the extent and character of the travel justify doing so. This may be wisely and effectively done at the American end of bridges like those involved in this case. But there is no obligation upon the part of the government to maintain such inspection at night or on Sundays and holidays. Regulations as to the

inspection of conveyances and personal baggage similar to those provided by the Act of February 7, 1920, even if not prescribed by that statute cannot be regarded as inconsistent with law.

[3] The appellant is quite wrong in saying that the Secretary of the Treasury compels it to pay for the cost of such inspection. He simply says that unless the plaintiff does agree to pay for it such inspection will not be maintained. We are also not at all persuaded by the argument that because nondutiable goods may be imported into the United States no inspection can be enforced in respect to them before entry. Government inspection is an essential prerequisite to entry. Only so can it be determined whether goods in point of fact are dutiable. U. S. v. Fifty Waltham Watch Movements (D. C.) 139 Fed. 291. Carriages, automobiles, and other conveyances and personal baggage may be reasonably detained to await such inspection. Otherwise a holiday would be afforded for smuggling. On the other hand, the regulations recognize that it is unnecessary to detain the plaintiff's passenger trolley cars, which run regularly forward and back on fixed tracks day in and day out throughout the year.

[4] The plaintiff has no standing to question these regulations, which do not apply to it, but to the owners of private conveyances and of personal baggage brought over the bridge.

The decree is affirmed.