**UNITED STATES of America, Plaintiff,**

v.

**R. E. CLAYBOURN, Defendant.**

Crim. No. 28911.

United States District Court
S. D. California, S. D.

Feb. 5, 1960.

Laughlin Waters, U. S. Atty., George Kell, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Edward L. Bracklow, San Diego, Cal., for defendant.

JAMES M. CARTER, District Judge.

This criminal case, tried without a jury, raises the interesting question as to whether a defendant who carried merchandise in his automobile across the International border from the United States to Mexico, then returned with the same merchandise in the car, and did nothing with the merchandise in Mexico, violated the provisions of Title 18 U. S. C., § 545.[1]

The indictment charges: "On or about November 4, 1959, in San Diego county, within the southern division of the southern district of California, defendant R. E. Claybourn, with intent to defraud the United States, did knowingly and wilfully smuggle and clandestinely introduce into the United States from a foreign country, namely Mexico, certain merchandise, to-wit; approximately one thousand Dexobarbital d-Amphetamine and Amobarbital tablets, which said merchandise should have been invoiced, and did fraudulently and knowingly import and bring into the United States from a foreign country, namely, Mexico, said merchandise contrary to law, in that said merchandise had not been presented for inspection, entered and declared as provided by United States Code, Title 19, Sections 1461, 1484 and 1485."

The facts show that Claybourn was a salesman for Hilly Medicinal Products, a company which sells drugs and vitamins, and had been working for them on a commission since 1953, calling on the

---

1. "§ 545. Smuggling goods into the United States

"Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or

"Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

"Shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section.

"Merchandise introduced into the United States in violation of this section, or the value thereof, to be recovered from any person described in the first or second paragraph of this section, shall be forfeited to the United States.

"The term 'United States', as used in this section, shall not include the Philippine Islands, Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, or Guam. As amended Aug. 24, 1954, c. 890, § 1, 68 Stat. 782; Sept. 1, 1954, c. 1213, Title V, § 507, 68 Stat. 1141; June 30, 1955, c. 258, § 2(c) 69 Stat. 242."

drug trade and some physicians. He also operated his own laboratory and sold products other than those of Hilly.

On November 4, 1959, he crossed the International border from California to Mexico, and at that time there was in the back of his car a bottle with 1,000 pills of the type alleged in the indictment, known to the trade as "Dexobarbital" and not a Hilly product. Upon his return to the United States he was subjected to the customary search and the bottle of pills was found in the trunk of his car and became the basis for the present charge.

The bottle of pills had rubber-stamped on it the name of "Perry Drug Co., Newark, New Jersey." Inquiry by defense counsel failed to establish the existence of any such organization. Apparently the practice was to use printed labels showing the trade name and ingredients of the pills and to rubber-stamp on the bottom of the label the name of a fictitious supply company.

The ugly specter of profiteering in drugs and unfair competition between drug manfacturers rears its head. The pills in question, "Dexobarbital" were made to a formula consisting of 5 mgm of d-Amphetamine and ½ gr. of Amobarbital. The d-Amphetamine is a stimulant and the Amobarbital is a hypnotic. The particular combination of the drugs, one offsetting the other, produces a weight reducing product.

The Hilly company makes this same drug under the name of "Dexamobarb." and sells it to drug stores at $4 per 1,000. Smith, Klein and French, hereafter S.K.F., using the identical formula, makes a similar pill under the trade name of "Dexamyl" which it sells to drug stores at $24 per 1,000. Some competitor, unknown, makes the "Dexobarbital" involved in this case,—a similar pill with the identical ingredients, which sells to the drug stores at $10 per 1,000. The three pills are identical in formula and action and are used for the same purpose, to-wit, weight reducing.

S.K.F. has used a distinctive "heart shaped" pill for various of their products and the pill here described is of such shape and is light green in color. Hilly Company uses a round green pill, slightly different in color and clearly distinguishable from the S.K.F. pill. The unknown competitor trading on the goodwill established by S.K.F., and the excessive price charged by S.K.F., has made his pill "heart shaped" and almost identical in size, formulation and color to the S.K.F. pill. Undoubtedly the price charged by S.K.F. and the identical appearance of the bootleg pill to S.K.F.'s create a ready market for the bootleg pills to druggists at $10 per 1,000.

Here we find a situation touched on by a recent Congressional investigation, demonstrating that a pill can be made and profitably sold for $4 per 1,000 to druggists while S.K.F. charges $24 and a bootleg competitor using the style and shape of S.K.F. charges $10.

The defendant had been selling the Hilly pills, "Dexamobarb" to the trade and discovered a demand for the bootleg pill "Dexobarbital." He contacted one Oscar B. Kessler, who apparently handled them out of Los Angeles, and arranged for several purchases for delivery to the trade. The day before the trip to Mexico, the defendant had delivered 20 bottles of "Dexobarbital" pills to a druggist in San Diego and had the one remaining bottle, the sample and the basis for this prosecution, in his car when he crossed the border. On his return to the United States, when interrogated by the Customs officers, he contended that the bottle of pills was a product of Hilly Company, apparently a design to cover up the transactions in the bootleg pills. He later testified they had been purchased from Kessler.

Kessler was called as a witness; gave his name and address; was represented by counsel and claimed the Fifth Amendment to all questions about the "Dexobarbital" pills. His counsel pointed out that his testimony might subject him to prosecutions under the Food and Drug Act, 21 U.S.C.A. § 301 et seq., for misbranding, mislabeling, alteration and various other possible violations. Ob-

viously one reason behind Kessler's refusal to answer was his desire to cover up any information on the bootleg trade in the pill, which was the facsimile of S.K.F.'s higher priced pill. The court sustained Kessler's claim of privilege on the ground that any evidence that might be a "link in the chain" connecting the witness with the commission of an offense would constitute a proper claim of privilege, Blau v. United States, 1950, 340 U.S. 159, 161, 71 S.Ct. 223, 224, 95 L.Ed. 170.

The defendant offered substantial proof by checks, invoices and records of phone calls that the "Dexobarbital" pills came from Kessler. There was no proof or contention by the government that the pills in question came from any Mexican source.

The question for decision is: Did the defendant smuggle or import the bottle of pills into the United States. We hereafter consider whether or not he had the requisite specific intent to constitute a violation of the statute.

Two Offenses Set Forth in Section 545

Sec. 545, Title 18 sets forth two different crimes: (1) Smuggling or clandestinely introducing merchandise which should have been invoiced, and (2) Knowingly importing or bringing into the United States merchandise contrary to law, without complying with other provisions of law, Babb v. United States, 5 Cir., 1955, 218 F.2d 538.

As the above case points out, there is a vast difference between the two crimes. Smuggling or clandestinely introducing goods or using false or forged documents on the one hand is "unlawful

and evil per se," (218 F.2d at page 540) while importing, bringing in, receiving etc., goods after importation is not evil per se but is a crime because of failure to comply with other statutes. The two crimes set forth in Section 545 can be traced back to two of the old Revised Statutes, smuggling based on R.S. Sec. 2865 and importation based on R.S. 3082.[2]

Smuggling

The first crime charged in the indictment alleges that the defendant with intent to defraud the United States "did knowingly and wilfully smuggle and clandestinely introduce into the United States from a foreign country" the merchandise described in the indictment.

Since the word "smuggle" and the phrase "clandestinely introduce" mean substantially the same thing viewed in the background of English common law, Keck v. United States, 1899, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 and since they refer to the acts of a defendant in surreptitiously and by concealment or fraud avoiding the customs and introducing goods into the United States, it is immediately apparent that where the facts show without dispute that a defendant took the same goods out of the country and thereafter brought them back into the country, that he was not smuggling or clandestinely introducing goods into the United States. The purpose of the statute is to *prevent* the surreptitious, clandestine or fraudulent entry of the goods into the United States. If the goods were already in the United States, taking them out and bringing them in again would not be the act intended to be prohibited by the statute.

2. Both R.S. 2865 as amended by the Act of February 27, 1877, c. 69, Sec. 1, 19 Stat. 247 and R.S. 3082 were repealed by the Act of September 21, 1921, c. 356 Title IV, Sec. 642, 42 Stat. 989. The same Act of September 1, 1922 in c. 356, Sec. 593 of Title IV, 42 Stat. 892 included both the crimes previously contained in the Revised Statutes, namely smuggling, Sec. 2865 and importing, Sec. 3082.

The next Congressional action was by the Tariff Act of 1930, wherein in Sec. 651(a) (1), Sec. 593 of the 1922 Act was repealed, and by new Sec. 593 to the Tariff Act of 1930 the crimes were again set forth, Act of June 17, 1930, c. 497, Title IV, Sec. 593, 46 Stat. 751.

This statute then became the basis for the 1940 edition of Title 19, Sec. 1593; and in the 1948 revision of Title 18 the statute became Sec. 545, Title 18 U.S.C., Statutes June 25, 1948, c. 645, 62 Stat. 716.

Furthermore, it is difficult to imagine a case based on this set of facts, where there would be the required "intent to defraud the United States," namely to defraud the United States out of the compliance with its customs laws.

■ Under the facts of our case, it is therefore apparent that the defendant did not commit the crime of knowingly and wilfully smuggling and clandestinely introducing into the United States the merchandise in question.

### Importing

The second charge contained in the indictment is, in substance, that the defendant did "fraudulently and knowingly import and bring into the United States from a foreign country" * * * the merchandise without presenting same for inspection, entry and declaration as provided by U.S.C.A., Title 19, Secs. 1461, 1484 and 1485.

Sec. 1461 provides in part,—"All merchandise and baggage imported or brought in from any contiguous country, except as otherwise provided by law or by regulations of the Secretary of the Treasury, shall be unladen in the presence of and be inspected by a customs officer at the first port of entry at which the same shall arrive; * * *."

It has been held that government inspection is an essential prerequisite of entry of imported goods whether they are dutiable or not; that inspection is necessary to determine whether they are in fact non-dutiable. International R. Co. v. Davidson, 2 Cir., 1921, 273 F. 153, 156, affirming district court decision in 271 F. 313; reversed on another ground, 1922, 257 U.S. 506, 42 S.Ct. 179, 66 L.Ed. 341. United States v. Kushner, 2 Cir., 1943, 135 F.2d 668, 670, certiorari denied 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850, rehearing denied 320 U.S. 808, 64 S.Ct. 32, 88 L.Ed. 488.

Sec. 1484, Title 19, U.S.C.A. provides that, with certain listed exceptions, the consignee of imported merchandise shall make entry thereof in writing. None of the exceptions listed concern goods which are allegedly non-dutiable.

Sec. 1485, Title 19 U.S.C.A. provides that every consignee in making an entry under Sec. 1484 in this title shall make and file a declaration under oath providing certain pertinent information concerning the goods.

It is thus apparent that when goods are imported and brought into the United States, regardless of whether or not they are dutiable, they must be presented for inspection, entered and declared as provided in the above code sections.

■ Assuming the defendant had the requisite intent to fraudulently and knowingly import and bring into the United States the goods in question, then the failure to comply with the customs laws would complete the offense and constitute a violation of the statute.

### Specific Intent

■ Specific intent is a question of fact. We find that the defendant did not commit the second crime charged in Title 18, Sec. 545 (importation) because on the facts of our case he did not have the requisite specific intent to commit the crime.