10-5204-cv
*United States v. Broadening-Info Enterprises, Inc.*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of September, two thousand fourteen.

PRESENT:

ROBERT A. KATZMANN,
*Chief Judge,*
SUSAN L. CARNEY,
*Circuit Judge,*
JANE A. RESTANI,
*Judge.\**

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.                                                                No. 10-5204-cv

BROADENING-INFO ENTERPRISES, INC.,

*Claimant-Appellant,*

THE PAINTING KNOWN AS "HANNIBAL,"
THE SCULPTURE KNOWN AS "ROMAN TOGATUS,"

*Defendant-in-rem.\*\**

---

\* The Hon. Jane A. Restani, of the United States Court of International Trade, sitting by designation.

**FOR CLAIMANT-APPELLANT:**      PHILIP A. BYLER (Andrew T. Miltenberg, *on the brief*), Nesenoff & Miltenberg, LLP, New York, NY,

**FOR PLAINTIFF-APPELLEE:**      JASON P. HERNANDEZ, Assistant United States Attorney (Diane Gujarati, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment entered on September 20, 2010, by the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*), granting summary judgment to Plaintiff-Appellee the United States and ordering the defendants-*in-rem*, a painting and a sculpture, to be forfeited to the government.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

In this case we address whether, in connection with an attempted importation, the United States government lawfully seized and claimed as forfeited two works of art: the painting *Hannibal*, by Jean-Michel Basquiat, and the Mediterranean sculpture called *Roman Togatus*,[1] a work of unknown authorship (together, the "Works" or "defendants-*in-rem*").

Claimant-Appellant Broadening-Info Enterprises, Inc. ("Broadening") appeals from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*) granting the government's motion for summary judgment and ordering Broadening to forfeit the Works to the United States pursuant to 19 U.S.C. § 1595a(c), entitled

---

[**] The Clerk of Court is directed to amend the official caption in this case to conform to the above listing of the parties.

[1] "Togatus" is the Latin word for an individual who is wearing a toga and is of civilian status. *See* OXFORD LATIN DICTIONARY 1946 (1992).

2

"Forfeitures and other penalties" (the "Forfeiture Statute"). In a prior summary order in this case, we affirmed the District Court's conclusion that the government satisfied the first element of section 1595a(c): that the Works were imported "contrary to law" because they were introduced into the country pursuant to invoices that were materially false in that they grossly misrepresented the Works' value. *United States v. Broadening-Info Enters., Inc.*, 462 F. App'x 93 (2d Cir. 2012). Those material misrepresentations, we held, violated a criminal statute, 18 U.S.C. § 542, entitled "Entry of goods by means of false statements." *Id.* at 97.

We remanded the case, however, pursuant to the procedures set forth in *United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994), for the District Court to address the second element of section 1595a(c): whether the Works were "smuggled[] or clandestinely imported or introduced" within the meaning of subsection (c)(1)(A) of section 1595a. On remand, the District Court ruled that the Works were indeed introduced as described in subsection (c)(1)(A). *See United States v. Painting Known as "Hannibal*," No. 08 Civ. 1511 (RJS), 2013 WL 1890220, at *1 (S.D.N.Y. Apr. 25, 2013). It therefore reaffirmed its prior judgment and order of forfeiture. With our appellate jurisdiction reinstated under *Jacobson*, Broadening now argues that this second ruling of the District Court was erroneous as well.

To resolve the instant appeal, we must determine whether the Works were "smuggled[] or clandestinely imported or introduced" when, although they were imported pursuant to materially false invoices, the United States was not deprived of any related customs duties. We must also determine whether the government has satisfied any scienter requirement

3

imposed by the statute, as well as whether the record evidence raises a genuine dispute of material fact precluding summary judgment.

For the reasons set forth below, we conclude that the seizure and forfeiture were lawful under section 1595a(c)(1)(A), and we AFFIRM the judgment of the District Court.

**BACKGROUND**

The relevant facts are largely undisputed. In July 2004, Broadening, a Panamanian company owned by Brazilian lawyer Herberto Carnide, purchased the Works from Bokara Corporation, a British Virgin Islands company. Broadening paid $1 million for *Hannibal* and $600,000 for *Roman Togatus*. Shortly after the purchase, Broadening arranged for the Works to be shipped to Europe, seeking more appropriate storage conditions and suitable buyers.

In January 2006, Broadening entered into a consignment agreement with A.M. Barral Fine Art Advisory LLC ("Barral"), a well-known New York firm specializing in the sale of modern paintings. Barral agreed to try to sell *Hannibal* for at least $2 million. In August 2007, Broadening agreed at Barral's request to allow *Hannibal* to be shipped to New York, where it could be viewed by other potential buyers. Broadening engaged a shipping concern called Crowne Relocations Netherlands to ship *Hannibal* to Day & Meyer, Murray & Young Corp. ("Day & Meyer"), a high-end storage company in New York. According to Broadening's owner, Barral "took all the necessary steps to import the painting Hannibal and made the arrangements to bring it from Broadening's warehouse in the Netherlands to its warehouse in New York." Carnide Decl. ¶ 23, J.A. 228. The invoice accompanying *Hannibal*'s shipment was prepared by Barral and made no mention of the Work's title or the

4

name of the artist.   Instead, it merely described the Work as a "PAINTING (NATURAL.)" with a value of "USD. 100,00 [sic]" and "NO COMMERCIAL VALUE."   J.A. 252.

Although ancient sculpture fell outside Barral's area of expertise, Broadening also engaged Barral (in August 2007) to sell *Roman Togatus.*   In September 2007, Barral shipped *Roman Togatus* to Day & Meyer pursuant to a Federal Express Air Waybill describing the shipment simply as a "statue" with a value of "US $100."   J.A. 184.   An invoice accompanying the waybill and bearing Broadening's name and stamp described *Togatus* as an "Ornament" with a "Rate Value" of "US$100.00" and having "NO COMMERCIAL VALUE."   J.A. 186.

After the Works arrived at Day & Meyer in New York, they were seized by U.S. Customs officials.   The government then arranged to have the Works appraised by National Appraisal Consultants, a firm that specializes in personal property appraisals.   That firm estimated the Works to have a combined market value in excess of $8 million.   (It estimated *Hannibal* to have a market value of $8 million and *Roman Togatus* to have a market value of $70,000.)   In February 2008, the government filed this forfeiture action against *Hannibal.*   In May, Broadening appeared in the legal proceedings and contested forfeiture by filing a notice of claim to the Work.   In October, the government added *Roman Togatus* as a defendant-*in-rem*, and soon after, Broadening filed a claim to the statue.

Some two years later, after discovery, the government successfully moved for summary judgment on its forfeiture claim regarding both Works.   As noted above, upon consideration of Broadening's appeal of that judgment, our Court largely affirmed the rulings of the District

5

Court.  *See Broadening*, 462 F. App'x at 97.  Applying our holding in *United States v. Davis*, 648 F.3d 84, 93 (2d Cir. 2011), we ruled principally that the District Court correctly concluded that the "innocent owner" defense and claimant-friendly burdens of proof established in the Civil Asset Forfeiture Reform Act of 2000 (codified at 18 U.S.C. § 983), do not apply to customs forfeitures effected—as this one was—under section 1595a(c) of title 19.

We also affirmed the District Court's ruling as to the first element of the Forfeiture Statute:  that the Works were "introduced into the United States contrary to law."  *Broadening*, 462 F. App'x at 97 (internal quotation marks omitted).  The "contrary to law" element was satisfied because they were imported using materially false invoices—a criminal act that violates section 542 of title 18.[2]  *See id.*

Because the District Court did not expressly address the second element needed to support forfeiture under subsection (c)(1)(A), however, we remanded the matter pursuant to our *Jacobson* protocol, requesting the District Court to make that determination in the first instance.  And in April 2013, the District Court issued a memorandum and order concluding that the Works were "smuggled[] or clandestinely imported or introduced" into the United States under subsection (c)(1)(A).  It again granted summary judgment to the United States, and Broadening renewed its appeal.

---

[2] Section 542 establishes criminal penalties for individuals who have introduced imported merchandise "by means of any fraudulent or false invoice," *inter alia*.  18 U.S.C. 542.

## DISCUSSION[3]

We review a district court's grant of summary judgment *de novo*, resolving all ambiguities and drawing all reasonable inferences in favor of the nonmoving party. *See United States v. Davis*, 648 F.3d 84, 90 (2d Cir. 2011). Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Title 19 of the United States Code, entitled "Customs Duties," addresses, among other related matters, tariffs imposed on imported goods. Section 1595a provides for forfeitures and imposes other penalties for importation contrary to the laws of the United States. Relevant here, section 1595a(c)(1)(A) authorizes forfeiture to the government of merchandise that meets two conditions: (1) it is "introduced or attempted to be introduced into the United States contrary to law," and (2) it is "stolen, smuggled, or clandestinely imported or introduced." 19 U.S.C. § 1595a(c)(1)(A). In this appeal, we address the second condition.

Broadening challenges the District Court's ruling on three grounds. First, Broadening argues that the use of materially false invoices, without more, is insufficient to establish that property was "smuggled[] or clandestinely imported or introduced." It contends that the government must demonstrate an actual evasion of customs duties, and that its failure to do so here—because the Works were not subject to duty—is fatal to the forfeiture action. Second,

---

[3] As a threshold matter, we note that at oral argument, we raised the issue of whether Broadening filed its notice of appeal within the 60-day jurisdictional period provided by Rule 4. *See* Fed. R. App. P. 4(a)(1)(B); *Gonzalez v. Thaler*, 132 S. Ct. 641, 652 (2012) (noting that the deadlines set by Rule 4 are jurisdictional in nature). In post-argument letters, Broadening represents, and the government agrees, that Broadening in fact filed the notice of appeal within the prescribed period, but the clerk of the district court mistakenly did not docket it until after the period had run. Accordingly, accepting the parties' representations, we find that we have appellate jurisdiction. *See Houston v. Lack*, 487 U.S. 226, 273 (1988) (noting that a notice of appeal is "filed" for purposes of Rule 4 when it is received by the clerk of the district court).

Broadening argues that implicit in section 1595a(c)(1)(A) is a scienter requirement that the government has failed to satisfy.   And third, Broadening maintains that record evidence raises genuine issues of material fact, making summary judgment inapt.

***Evasion of customs duties***.   To begin, Broadening contends that, for merchandise to be "smuggled[] or clandestinely imported or introduced," there must be an actual evasion of customs duties.   We disagree.

To interpret subsection (c)(1)(A), we start with the plain language of the statutory text at the time of its enactment.   *See, e.g.*, *United States v. Vargas-Cordon*, 733 F.3d 366, 380-81 (2d Cir. 2013).   This language, together with much of the rest of the Forfeiture Statute, was enacted in the early 1990s as part of the North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 624, 107 Stat. 2057, 2187 (1993).   The section represented an effort "to codify existing practice and . . . to clarify the circumstances under which merchandise may be seized and forfeited."   H.R. Rep. No. 103-361, pt. 1, at 125 (1993). In its contemporary ordinary meaning, the word "smuggled" can—but need not necessarily—carry a connotation of evading customs duties.   *See, e.g.*, American Heritage Dictionary of the English Language 1644 (4th ed. 2000) (defining "smuggle" alternatively as "[t]o import or export without paying lawful customs charges or duties" and as "[t]o bring in or take out illicitly or by stealth").   And while the ordinary meaning of the phrase "clandestinely imported or introduced" arguably carries no such connotation, *see, e.g.*, *id.* at 341 (defining "clandestine" as "[k]ept or done in secret, often in order to conceal an illicit or improper purpose"), we recognize that variants of the words "smuggle" and "clandestinely

8

introduce" have long been used in tandem in Anglo-American law to "mean substantially the same thing," *United States v. Claybourn*, 180 F. Supp. 448, 451 (S.D. Cal. 1960) (citing *Keck v. United States*, 172 U.S. 434 (1899)).

Seizing upon this apparent ambiguity, Broadening argues that our interpretation of subsection (c)(1)(A) should be controlled by the Supreme Court's decision in *Keck v. United States*, 172 U.S. 434 (1899). In *Keck*, the Court addressed the requirements for conviction of "smuggling" under an 1877 criminal statute. The defendant, Keck, arranged for a steamer captain to bring a package of diamonds covertly into the United States. Before the ship landed, however, and before the diamonds crossed the point at which any customs duties were owed, Treasury officials boarded the ship and seized the package. *Id.* at 439-42.

Reversing Keck's smuggling conviction, the Court held that "mere acts of concealment of merchandise . . . at best are but steps or attempts, not alone in themselves constituting smuggling or clandestine introduction." *Id.* at 445. It held, further, that the plain language of the 1877 statute required an actual evasion of customs duties to support a conviction. *See id.* The requirement that duties be evaded comported, the Court observed, with the common-law understanding of smuggling and clandestine introduction. *See, e.g.*, *id.* at 446 ("Blackstone defines smuggling to be 'the offense of importing goods without paying the duties imposed thereon by the laws of the customs and excise' . . . ." (citation omitted)); *id.* at 446-47 (noting that early "English statutes" supported the view that "the words 'smuggling' and 'clandestine introduction,' . . . signified the bringing of the goods on land, without authority of law, in order to evade the payment of duty").

9

According to Broadening, because the Works are exempt from duties,[4] importation pursuant to the invoices' false statements regarding the Works' value did not deprive the United States of customs duties. It maintains that, under *Keck*, no smuggling or clandestine introduction occurred here, and the forfeiture claim must be denied. We find this argument unpersuasive.

The 1877 statute at issue in *Keck* made it a crime for any person to

> knowingly and wilfully, with *intent to defraud the revenue* of the United States, smuggle, or clandestinely introduce, into the United States, any goods, wares or merchandise, subject to duty by law, and which should have been invoiced, without *paying or accounting for the duty* . . . .

*Id.* at 443-44 (quoting Rev. Stat. § 2865) (emphasis added). Thus, the 1877 statute expressly provided that the crime of smuggling or clandestine introduction required an intent to defraud the United States of customs-related revenue. The Forfeiture Statute, by contrast, makes no mention of any such intent, nor of the failure to pay duties of any kind. Broadening's reliance on *Keck* is therefore misplaced. *Keck* is, at bottom, a statutory construction case, and its holding is limited to the specific statute it construed.

Moreover, to the extent Broadening contends that *Keck*'s historical discussion of the common law meanings of smuggling and clandestine introduction should control our analysis, we are unpersuaded. Rather, we agree with the government that subsection (c)(1)(A) should be read consistently with the current criminal smuggling statute, 18 U.S.C. § 545. *See*

---

[4] Under Chapter 97 of the Harmonized Tariff Schedule of the United States ("HTSUS"), certain forms of original artwork are not subject to duty. These include "[p]aintings, drawings and pastels, executed entirely by hand," and "[o]riginal sculptures and statuary, in any material." Subheadings 9701.10.00.00, 9703.00.00.00, HTSUS (2014) (Rev. 1), *available at* http://hts.usitc.gov (last visited Sept. 6, 2014); *see also* 19 U.S.C. § 1202.

*Boumediene v. Bush*, 553 U.S. 723, 776 (2008) ("When interpreting a statute, [courts] examine

related provisions in other parts of the U.S. Code."). Section 545, entitled "Smuggling goods

into the United States," imposes criminal penalties on anyone who

> knowingly and willfully, with intent to defraud the United States, smuggles, or
> clandestinely introduces or attempts to smuggle or clandestinely introduce into
> the United States any merchandise which should have been invoiced, or makes
> out or passes, or attempts to pass, through the customhouse any false, forged,
> or fraudulent invoice, or other document or paper . . . .

18 U.S.C. § 545.

To be sure, the phrase "with intent to defraud the United States," might, upon first

reading, suggest evasion of duties. But we long ago held that section 545 broadened the scope

of criminal smuggling beyond revenue-related infractions. *See United States v. McKee*, 220 F.2d

266, 269 (2d Cir. 1955) (holding that under section 545, "it is no longer necessary to show that

the item or items introduced clandestinely into the United States were subject to duty"). As

we explained, "Adequate reporting of merchandise being brought into the country is

absolutely necessary to the enforcement of the customs laws, and failure to comply with these

requirements is just as criminal as failure to pay the customs fees."[5]  *Id.*; *see also United States v.*

*Kurfess*, 426 F.2d 1017, 1019 (7th Cir. 1970) (agreeing with our analysis in *McKee* and

---

[5] Here, for example, the government contends that the false statements affected how the Works were processed by Customs officials, because works valued below a nominal amount receive expedited treatment at the border. *See* 19 C.F.R. § 128.24(a) (providing that "[i]nformal entry procedures" may be used for certain shipments valued at $2,500 or less); *id.* § 128.24(e) (providing that certain shipments valued at $200 or less may be imported without usual customs documentation).

11

"constru[ing] the phrase 'clandestinely introduces' [in section 545] to refer to any method of introducing goods into this country surreptitiously by concealment or fraud").[6]

Our holding in *McKee* was based in large part on the statute's history. *See McKee*, 220 F.2d at 269. Prior versions of the criminal smuggling statute (including the 1877 statute construed in *Keck*) had required a specific intent to defraud the *revenue* of the United States.[7] As we explained in *McKee*, however, Congress's amendment and recodification of the criminal smuggling statute under section 545 deleted any reference to revenue. *See id.* Thus, whatever "smuggling" may have entailed under the 1877 statute at issue in *Keck*, or at common law in Blackstone's time, the crime of "Smuggling goods into the United States" under current law may be comprised of the mere knowing use of a "false, forged, or fraudulent invoice"—without regard to the action's impact on customs duties. 18 U.S.C. § 545.

In our view, because section 545—which broadly defined the crime of smuggling to include non-revenue related infractions—was the law of the land when Congress enacted the Forfeiture Statute, the two statutes should be read consistently. *See Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 147 (2d Cir. 1999) ("When Congress enacts a statute, it is deemed to know of its prior actions, particularly where the subject matter of the statutes in question is related .

---

[6] We emphasized the point more recently in *United States v. An Antique Platter of Gold*, 184 F.3d 131 (2d Cir. 1999), where we ruled, with respect to a separate section of title 18 concerning imports, that "a false statement is material under [s]ection 542 if it has the potential significantly to affect the integrity or operation of the importation process as a whole, and . . . neither actual causation *nor harm to the government* need be demonstrated." *Id.* at 136 (emphasis added) (internal quotation marks omitted).

[7] Earlier iterations of the criminal smuggling statute, including section 19 of the Tariff Act of 1842 (the legislative antecedent to the 1877 statute discussed in *Keck*) and section 593 of the Tariff Act of 1930, both "required a showing that the defendant had the intent to defraud the revenue of the United States." *United States v. Borello*, 766 F.2d 46, 51 (2d Cir. 1985) (internal quotation marks omitted). In 1948, Congress enacted section 545, the current criminal smuggling statute, amending the prior version and recodifying the statute in title 18 rather than title 19. *See* Pub. L. No. 80-772, § 545, 62 Stat. 683, 716 (1948).

. . .").  The limitations on the concepts of smuggling and clandestine introduction that Broadening cites were specifically removed by Congress long ago, and we see no reason to presume that Congress intended to reintroduce these limitations *sub silentio* in section 1595a(c)(1)(A).

*Scienter.*  Broadening also argues that the phrase "smuggled[] or clandestinely imported or introduced" contains an implicit scienter requirement that the government has not satisfied in this case.  We agree with the District Court, however, that we need not decide here whether section 1595a(c)(1)(A) contains a scienter requirement, or if so, what it entails, since the record below would suffice to satisfy any such requirement.  *See Painting known as "Hannibal,"* 2013 WL 1890220, at *4.  The evidence establishes beyond reasonable dispute that: (1) Broadening retained Barral to sell the Works; (2) Barral knew that *Hannibal* was a painting by Basquiat worth millions of dollars; (3) Barral arranged for the artworks to be imported into the United States and prepared all of the relevant documentation; (4) the shipping invoices for the Works grossly understated their value and failed to identify their titles or Basquiat's name; (5) after shipping, Barral told Broadening that misrepresenting the value of artwork on shipping invoices was an acceptable industry practice; and (6) because of the gross undervaluation of the Works, the Works were not subjected to the otherwise applicable formal entry requirements when they were imported.

In a customs forfeiture action under section 1595a, the initial burden rests on the government to demonstrate probable cause that the merchandise is subject to forfeiture.  *See Davis,* 648 F.3d at 95-96; *see also* 19 U.S.C. § 1615 (establishing applicable "[b]urden[s] of proof

13

in forfeiture proceedings"). The burden of persuasion then shifts to the claimant to show, by a preponderance of the evidence, that the merchandise is not subject to forfeiture. *See Davis,* 648 F.3d at 95-96; *see also United States v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, Conn.*, 897 F.2d 97, 101 (2d Cir. 1990) (explaining the applicable burdens of proof in customs forfeiture proceedings). Broadening failed to meet that burden: it has presented no evidence suggesting that its consignee's actions were not knowing and intentional. The unrebutted evidence described above thus would compel any reasonable jury to find that there was probable cause to believe that Barral smuggled or clandestinely introduced the Works by means of materially false invoices. No more is required.

**Issues of material fact.** Last, Broadening argues that record evidence raises genuine issues of material fact as to whether the Works were "smuggled[] or clandestinely imported or introduced" into the United States. In particular, Broadening points to evidence suggesting that: (1) as the government acknowledges and we have discussed, the defendants-*in-rem* were exempt from customs duties, therefore depriving Broadening of a motive for effecting a clandestine importation; (2) Broadening itself was not involved in preparing the invoices and was unaware of their falsity; and (3) Barral publicly advertised *Hannibal* for sale on its website, an act assertedly at odds with the "clandestine" introduction of the painting into the country.

But none of these factors bears on the statute's application here. First, as explained above, property may be "smuggled[] or clandestinely imported or introduced" into the United States even if it is not subject to customs duties. Second, section 1595a(c)(1)(A) contains no requirement that, to be forfeitable, property must be introduced into the United States *by the*

14

*property's owner.* Indeed, we have expressly rejected the notion that section 1595a contains an innocent owner defense, holding rather that the statute "is not susceptible to an interpretation that a legitimate possessory interest in the property might defeat an otherwise valid forfeiture claim." *Davis*, 648 F.3d at 93. And third, although Barral may have publicly advertised *Hannibal* for sale, the shipping invoices grossly misrepresented the value of the Works. There is no genuine issue of fact material to section 1595a(c)'s application here.[8]

## CONCLUSION

We have considered all of Broadening's remaining arguments and find them to be without merit. The District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[8] We note that the panel raised the question at oral argument whether the government should have proceeded by seeking monetary penalties under 19 U.S.C. § 1592 rather than forfeiture under 19 U.S.C. § 1595a(c). Section 1595a(c)(4) provides that "[i]f the merchandise is imported or introduced contrary to a provision of law which governs the classification or value of merchandise and there are no issues as to the admissibility of the merchandise in the United States, it shall not be seized except in accordance with section 1592 of this title." Section 1592 in turn provides monetary penalties for making false statements in customs documents, and limits the circumstances under which the government may seize or forfeit merchandise imported or introduced by means of such false statements. *See* 19 U.S.C. § 1592(a), (c)(1)-(3), (c)(14). Although we may question whether the government properly avoided the limitations of section 1595a(c)(4) and section 1592 in this case, we need not resolve that issue here. Broadening failed to raise the issue to the district court, in the initial appeal, or in the instant reinstated appeal, and has therefore forfeited it. *See, e.g., Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 408 (2d Cir. 2014); *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009).